# EXHIBIT "A"


CT Corporation

**Service of Process Transmittal**
08/24/2010
CT Log Number 517164861

*114820 pldg*

RECEIVED

AUG 25 2010

Christopher Van Gundy

| | |
|---|---|
| **TO:** | Laura Crawford, Litigation Department<br>Roll International Corporation<br>11444 W. Olympic Blvd., Tenth Floor<br>Los Angeles, CA 90064- |
| **RE:** | **Process Served in Delaware** |
| **FOR:** | POMWonderful LLC (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Mary Giles, Individually and on Behalf of All Others Similarly Situated, Pltf. vs. Pom Wonderful, LLC, Dft.<br>Name discrepancy noted. |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Certificate of Service, Attestation, Complaint |
| **COURT/AGENCY:** | Broward County Seventeenth Judicial Circuit Court, FL<br>Case # 10 32192 |
| **NATURE OF ACTION:** | Clas Action - Breach of Contract - Failing to provide the product which could provide the benefits described the have health beenfits |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/24/2010 at 14:50 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Stuart A. Davidson<br>Robbins Geller Rudman & Dowd LLP<br>120 East Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432<br>561-750-3000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/24/2010, Expected Purge Date: 08/29/2010<br>Image SOP<br>Email Notification, Laura Crawford lcrawford@roll.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | The Corporation Trust Company<br>Scott LaScala<br>1209 Orange Street<br>Wilmington, DE 19801<br>302-658-7581 |

Page 1 of 1 / JP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

## 10 32192

MARY GILES, Individually and on Behalf of
All Others Similarly Situated,

Case No. _____

                       Plaintiff,

CLASS REPRESENTATION

## 14

   vs.

POM WONDERFUL, LLC,

JURY TRIAL DEMANDED

                Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this lawsuit on Defendant:

### POM WONDERFUL, LLC

by serving its Registered Agent:

THE CORPORATION TRUST COMPANY
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

     Each Defendant is required to serve written defenses to the complaint or petition on ROBBINS GELLER RUDMAN & DOWD LLP, plaintiff's attorney, whose address is 120 E. Palmetto Park Road, Suite 500, Boca Raton, FL 33432, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on August 6, 2010 AUG 06 2010

HOWARD C. FORMAN
CLERK OF THE CIRCUIT COURT
BY: _____
As Deputy Clerk

SEAL
CIRCUIT & COUNTY
BROWARD COUNTY, FLORIDA

Date Served: 8/24/10
Time Served 2:00
DN

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MARY GILES, Individually and on Behalf of
All Others Similarly Situated,                    Case No. 10-32192 (14)

                          Plaintiff,

                                                  CLASS REPRESENTATION

        vs.

POM WONDERFUL LLC,

                          Defendant.

_____/

### NOTICE OF PROPOUNDING PLAINTIFF'S FIRST SET OF
### INTERROGATORIES TO DEFENDANT POM WONDERFUL LLC

Plaintiff Mary Giles ("Plaintiff"), individually and on behalf of all others similarly situated,

through counsel, and pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, hereby

propounds Plaintiff's First Set of Interrogatories to Defendant POM WONDERFUL LLC ("POM"

or "Defendant"), attached hereto, to be answered under oath and in writing, within the time and

manner prescribed by law pursuant to the applicable Rule of the Florida Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Defendant along with the Summons and Complaint.

DATED: August 17, 2010

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 982407

_____
Stuart A. Davidson

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

Attorneys for Plaintiff and the Class

Pursuant to Florida Rule of Civil Procedure 1.340, plaintiff Mary Giles ("Plaintiff") hereby propounds the following written interrogatories to defendant POM each of which is to be answered fully and separately, in writing within 45 days of service of these interrogatories.

**I.    DEFINITIONS**

The following definitions apply to each of the interrogatories:

1.      "You," "your" or "POM" shall mean defendant POM Wonderful LLC, individually or in any combination, and any of its corporations, businesses, subsidiaries, divisions, subdivisions, affiliated entities, predecessors, successors, parents, and their respective officers, directors, employees, partners, representatives, agents, attorneys, accountants or other persons occupying similar positions or performing similar functions.

2.      "PWP" refers to Pom Wonderful Pomegranate Juice, manufactured, marketed, and sold by POM.  This includes, but is not limited to, the advertisements detailed in paragraph 8 of the complaint which was served contemporaneously with this discovery.

3.      "Advertisement(s)" shall mean any promotion, promotional campaign, contest or any other method by which to promote PWP.

4.      "Affiliate(s)" means any natural person, public or private corporation, general or limited partnership, joint venture, association, government or governmental entity (including any governmental agency or political subdivision of any government), group, form of business or legal organization or arrangement, or other legal entity, including the representatives of any such persons or persons with which you are close in connection, allied, associated, attached to as a member or branch, effectively control, or are effectively controlled and/or owned by, dependent and/or rely upon.

5.     "Class members" shall mean all persons who have purchased PWP. Excluded from the Class are POM's officers, directors and employees and those who purchased PWP for the purpose of resale.

6.     "Employee(s)" means any person who at any time during the period covered by this request (whether the person is a current or former employee) acted or purported to act on behalf of another person or persons, including, but not limited to, all past and present directors, officers, executives, agents, representatives, attorneys, accountants, independent contractors, advisors, and consultants of such other person or persons.

7.     "Person(s)" means any natural person, public or private corporation, general or limited partnership, joint venture, association, government or governmental entity (including any governmental agency or political subdivision of any government), group, form of business or legal organization or arrangement, or other legal entity, including the representatives of any such person or persons.

8.     "Revenues" means all monies received, including all compensation, premiums, recompense, reimbursement, restitution, remuneration, commissions and salary.

9.     "Studies" means all scientific studies, whether or not a manuscript was prepared, including, but not limited to, human studies, animal studies, in vitro studies, ex vivo studies, pilot studies, pre-clinical and clinical studies, practice tests, research projects, and scientific manuscripts, whether published or unpublished.

10.     "And" and "or" are to be considered both conjunctively and disjunctively. The singular form of a noun or pronoun includes the plural form and vice versa.

11.     "Any" is understood to include and encompass "all." The word "all" also includes "each" and vice versa.

-4-

## II.   INSTRUCTIONS

1.      If the person who verifies the answers to the interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of information is documentary, provide a full description including the location thereof.

2.      Where identification of a meeting is required, the following shall be separately stated as to each meeting:

      (a)      the dates and place at which it occurred;

      (b)      the identity of the persons involved;

      (c)      the substance of the subjects discussed; and

      (d)      the name and present address of every other person who, though not present or involved, possesses information concerning the existence or nature of said meeting.

3.      Where identification of a telephone conversation is required, the following shall be separately stated as to each conversation:

      (a)      the date, the identity and location of the originators of the call;

      (b)      the identity and location of the recipient of the call;

      (c)      the identity and location of all other persons who participated in the call;

      (d)      the substance of the subjects discussed; and

      (e)      the identity of any other persons who, though not participating in the call, possess information concerning the existence or nature of said telephone conversation.

4.      Where identification of a document is required, the following shall be separately stated as to each document:

(a)     its date, its exact title, and the nature and substance of the document with sufficient particularity to enable it to be identified and located within any document production;

(b)     the name of the author, his or her business affiliation (presently and at the time the document was prepared), and his or her last known address;

(c)     the name, business affiliation (both presently and at the time the document was prepared) and the last known address of the addressee;

(d)     the name, business affiliation (both presently and at the time the document was prepared) and the last known address of every person to whom a copy of the document was to be sent, other than the addressee described above;

(e)     the names and addresses of all persons who now possess either the original or any copy thereof;

(f)     the identification and location of the files where the original and each copy is normally or presently kept; and

(g)     if such document is no longer in existence, state:

(i)      the circumstances surrounding its elimination;

(ii)     the date and reasons for such elimination; and

(iii)    the identity of the person(s) who ordered and/or supervised the elimination.

5.     Whenever identification of a person is required, the following shall be separately stated as to each person:

(a)     the name and last known business address or location and phone number of each such person; and

(b)     if such person is an individual, additionally state:

-6-

        (i)       the business position or positions held by that individual at the time or times for which such identification is requested;

        (ii)      such person's last known residence address and telephone number; and

        (iii)      if such a person is not an individual, but rather an entity or organization, additionally identify the individual(s) employed by or representing such entity or organization who has knowledge of the matter at issue.

6.     If at any time after answering these interrogatories you determine that an answer you provided was false, you must immediately notify plaintiff's counsel and provide amended answers as soon as reasonably possible.

7.     If you refuse to respond to any of these interrogatories based on a claim of privilege or confidentiality, you must provide a statement of the claim of privilege (including work-product) and all facts relied upon in support of that claim, including the parties involved, any dates involved, the relevant subject matter of the privileged material, any documents or oral communications supporting the privileged information, including the dates, authors, recipients, title and subject matter, and present location of any documents involved. In the case of attorney work-product privilege, you must also identify the litigation for which the work-product was prepared.

8.     Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated entities, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients, or other representatives of affiliated third parties.

9.     If you answer any interrogatory by reference to business records, identify such records by specific bates number and the name(s) of your employee(s) certifying the documents as business records for purposes of answering the interrogatory.

## III.    RELEVANT TIME PERIOD

Unless otherwise stated, these interrogatories seek information concerning the time period from four years prior to August 6, 2010 until the present and shall include all documents and information that relate to, in whole or in part, such period or to events or circumstances during such period, even though dated, prepared, generated or received prior to, or subsequent to, that period.

## IV.    FIRST SET OF INTERROGATORIES

INTERROGATORY NO. 1:

Identify the studies which you assert constitute the clinical and scientific support for the health benefits you claim in your advertisements for PWP.

INTERROGATORY NO. 2:

Identify all studies which relate to or concern the health effects, if any, of PWP.

INTERROGATORY NO. 3:

Identify all person(s) involved at any time in the creation of advertising or marketing for PWP by stating each person(s) name, title, employer, business address and department or division and whether the person is currently employed by you and, if not, the person's last known home address, business address and telephone number.

INTERROGATORY NO. 4:

Provide on a quarterly basis the net sales attributable to the sale of PWP in the United States.

INTERROGATORY NO. 5:

Provide on a quarterly basis the cost of goods sold attributable to the sale of PWP in the United States.

INTERROGATORY NO. 6:

Provide on a quarterly basis the advertising and promotional expenses attributable to the sale of PWP in the United States from 2008 to the present.

-8-

INTERROGATORY NO. 7:

Provide on a quarterly basis the research and development expenses attributable to the sale of PWP in the United States from 2008 to the present.

INTERROGATORY NO. 8:

Provide on a quarterly basis the operating income attributable to the sale of PWP in the United States.

INTERROGATORY NO. 9:

State the amount of money you spent on the advertising and promotion of PWP in the United States for each year or fraction thereof.

INTERROGATORY NO. 10:

Provide on a quarterly basis the gross profit margin for PWP and all other POM products manufactured, sold or licensed for sale by you in the United States.

INTERROGATORY NO. 11:

Provide on a quarterly basis the net sales attributable to the sale of POM in Florida.

INTERROGATORY NO. 12:

Provide on a quarterly basis the cost of goods sold attributable to the sale of PWP in Florida.

INTERROGATORY NO. 13:

Provide on a quarterly basis the advertising and promotional expenses attributable to the sale of PWP in Florida from 2008 to the present.

INTERROGATORY NO. 14:

Provide on a quarterly basis the research and development expenses attributable to the sale of PWP in Florida from 2008 to the present.

INTERROGATORY NO. 15:

Provide on a quarterly basis the operating income attributable to the sale of PWP in Florida.

INTERROGATORY NO. 16:

State the amount of money you spent on the advertising and promotion of PWP in Florida for each year or fraction thereof.

INTERROGATORY NO. 17:

Identify the name, title, employer, business address and department or division and whether the person is currently employed by you and, if not, the person's last known home address, business address and telephone number of any person who has, claims to have or whom you believe may have knowledge or information pertaining to the allegations in the Complaint filed in this action.

## ATTESTATION

_____

Name of Person
Answering Interrogatories _____
Title:_____

STATE OF _____ )

                              ) ss

COUNTY OF _____ )

      The foregoing instrument was acknowledged before me this _____ day of

_____ , 2010, by _____ , who is personally known

to me or who has produced _____ as

identification, and who did take an oath.

_____

NOTARY PUBLIC
State of_____
Print Name_____
My Commission Expires:_____

(SEAL)

-11-

```
ERROR: undefined
OFFENDING COMMAND: ~

STACK:
```

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MARY GILES, Individually and on Behalf of
All Others Similarly Situated,

                             Plaintiff,

    vs.

POM WONDERFUL, LLC,

                  Defendant.

_____/

Case No. _____ **10  32192**

CLASS REPRESENTATION

**14**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

A TRUE COPY
AUG 06 2010
HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

Plaintiff Mary Giles ("Plaintiff"), brings this action on behalf of herself and all others similarly situated, against defendant POM WONDERFUL, LLC ("POM" or "Defendant"), and alleges:

## JURISDICTION AND VENUE

1.     This action is brought as a class action pursuant to Florida Rule of Civil Procedure 1.220.

2.     The damages suffered and sought to be recovered herein total, in the aggregate, in excess of the minimum jurisdictional limits of this Court. Plaintiff's individual claims do not exceed the sum or value of $75,000.

3.     Venue is proper in Broward County, Florida because the causes of action asserted herein occurred and/or accrued, among other places, in Broward County, Florida.  Venue is also appropriate in this Court because POM conducts substantial business in Broward County and has targeted consumers to purchase its products and has advertised in various media in Broward County.

4.     This action is not removable pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332 (2005), pursuant to *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093, at *5 (11th Cir. July 19, 2010).

## NATURE OF THE ACTION

5.     Since 2002, POM has marketed and sold POM Wonderful brand pomegranate ("PWP"), other juice blends, teas, and extracts.  POM has promoted PWP to customers as having special health benefits.

6.     Through an extensive and comprehensive nationwide marketing campaign on its various websites, among other places, POM has promoted the consumption of PWP to consumers as having special health benefits, including but not limited to, the prevention, mitigation, and or

- 1 -

treatment of the following: (a) atherosclerosis; (b) Blood Flow/Pressure; (c) Prostate Cancer; (d); Erectile Function; (e) cardiovascular disease; (f) Reduce LDL cholesterol; (g) and other age related medical conditions.[1]

7.     This extensive marketing campaign goes so far, that, on February 23, 2010, the FDA labeled PWP an unapproved/misbranded drug and a misbranded food product.

8.     POM's misleading marketing campaign begins with language on their website and other advertising stating that the product is health in a bottle.  Likewise, POM claims that they have over $34 million dollars in funding for scientific research which implies that PWP delivers the specific claimed health benefits.  POM's exhaustive advertising campaign builds on this deception. The carton appears as follows:



### Juice

POM Wonderful 100% Pure Pomegranate Juice is health in a bottle. Not only is it packed with some of nature's most powerful antioxidants, but we have we have also provided over $34M in funding to support scientific research on POM products at top institutions around the globe.

---

[1]     POM's  websites are: www.pomwonderful.com; www.pompills.com.

- 2 -

9.    The audacity of the implication that POM's claims are backed by science are only outdone by the advertisements POM has utilized to mislead and deceive consumers.   A picture speaks a thousand words:





- 3 -







# Survival kit.

**POM** Wonderful Pomegranate Juice.
The Antioxidant Superpower.~



# Heart therapy.

**POM** Wonderful Pomegranate Juice.
The Antioxidant Superpower.~















**What gets your heart pumping?**

The power of 100% pure pomegranate juice.

10.    In sum, the message is drink PWP and it will keep you young forever. Each person who has purchased PWP has been exposed to POM's misleading advertising message multiple times.

11.    In fact, POM does not posses or rely upon a reasonable basis that substantiated the representations above, at the time the representations were made. Therefore, these representations are false and reasonably likely to deceive the public.

12.    For the types of marketing claims at issue, the Federal Trade Commission ("FTC") rules require that POM have competent and reliable scientific evidence for its health claims at the time the claims were made. However, POM did not, and has never possessed the requisite clinical substantiation.

13.    POM's nationwide advertising campaign has been extensive and comprehensive, spending millions of dollars to convey these deceptive messages to consumers throughout the United States. POM conveyed and continues to convey its deceptive claims about PWP through a variety of media, including television, newspapers, magazines, direct mail, the Internet, point-of-sale displays, and on the product's labels and labeling.

14.     Through this extensive and comprehensive campaign, POM has conveyed one message: the health claims for PWP are backed by science.

15.     POM's advertising and marketing campaign is designed to cause consumers to buy PWP as a result of this deceptive message, and POM has succeeded.  As a result of this campaign, the PWP launch has elevated the product to one of the top sellers in the product category.  According to the market-data firm Information Resources, Inc., annual sales of POM juices have risen from $12 million in 2003 to $91 million today.

16.     And as a result of the misleading messages conveyed through its campaign, POM has been able to charge a significant price premium for PWP.

17.     Plaintiff brings this action on behalf of herself and other similarly situated consumers, who purchase PWP in the State of Florida in order to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception Defendant has created in the minds of consumers, and to obtain redress for those who have purchased PWP.  Plaintiff alleges violations of Florida's Deceptive and Unfair Trade Practices Act and breach of express warranty created by Defendant's advertising, including its labeling.

## PARTIES

18.     At all times relevant to this matter, Plaintiff Mary Giles resided and continues to reside in this County.  During the class period, Plaintiff was exposed to and saw the POM advertising claims, purchased PWP in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein.

19.     Defendant POM WONDERFUL, LLC is incorporated in the State of Delaware and is headquartered in Los Angeles, California.  POM promotes markets, distributes and sells PWP throughout the United States, including to tens of thousands of consumers in the State of Florida.

- 9 -

## SUBSTANTIVE ALLEGATIONS

20.    Through an extensive and comprehensive nationwide marketing campaign, POM makes various health claims on its websites and packaging that PWP will cure, mitigate, or prevent the following: (a) atherosclerosis; (b) Blood Flow/Pressure; (c) Prostate Cancer; (d); Erectile Function; and if that isn't enough; (e) Reduce LDL cholesterol.

21.    POM claims in its advertising and labeling that is products, including PWP, are "backed by $25 million in medical research," "backed by $25 million in bulletproof medical research," or that "POM is the only pomegranate company whose product are backed by $34 million in scientific research."

22.    In sum, the message is drink PWP and it will keep you young forever.  Each person who has purchased PWP has been exposed to POM's misleading advertising message multiple times.

### POM'S Unfair and Deceptive Claims for PWP

23.    POM's advertising and marketing campaign is designed to cause consumers to buy PWP as a result of this deceptive message, and POM has succeeded.  As a result of this campaign, POM has elevated the product to one of the top sellers in the product category.  According to the market-data firm Information Resources, Inc., annual sales of POM juices have risen from $12 million in 2003 to $91 million today.

24.    As more proof that POM is seeking to deceive the public with its misleading and deceptive claims, on or about February 23, 2010, the FDA determined that PWP is misbranded as it is offered and promoted for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; thus, adequate directions for use can not be written so a layperson can use them safely.

- 10 -

25.     This extensive marketing campaign promotes conditions that cause the product to be classified as a drug. The claims made by POM that PWP's intended use is the cure, mitigation, treatment, or prevention of disease, violates the Federal Food, Drug, and Cosmetic Act (the "FDA Act").

26.     PWP is misbranded as a drug as it is offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; thus, adequate directions for use can not be written so a layperson can use them safely.

27.     Once again, more proof that POM is seeking to deceive the public with misleading and deceptive claims, on or about February 23, 2010, the FDA also determined that PWP is misleading because the product label bears a nutrient content claim but does not meet the requirements to make the claim.

28.     For example, POM claims that PWP has "[u]niquely high levels of powerful antioxidants . . .," and that "POM Wonderful 100% Pomegranate Juice...full of antioxidants called phytochemicals." Characterizing the level of a nutrient in food labeling of a product without complying with the requirements pertaining to nutrient content claims for that nutrient misbrands the product to the detriment of the consuming public.

29.     POM's claim of "[u]niquely high levels of powerful antioxidants . . . " fails to declare the name of the antioxidant nutrients that are the subject of the claim. POM's nutrient content claims expressly characterize the level of antioxidant nutrients present in a food are improper as they do not reference for the daily intake ("RDI") for each of the nutrients, and do not include the names of the antioxidant nutrients subject to their claims: (1) as part of the claim or (2) elsewhere on the same panel of the product label, provided that the nutrient names are linked by a symbol to the claim. The nutrient content claim "[f]ull of antioxidants called phytochemicals" characterizes the

- 11 -

level of the antioxidant nutrient "phytochemicals"; however, no RDI has been established for phytochemicals. Accordingly, this claim is also improper.

30.     Defendant also makes the following unfair and deceptive claims for PWP:

**From a webpage titled "Featured Scientific Studies":**

• "Atherosclerosis: . . .  In a pilot study of 19 subjects with carotid artery stenosis (plaque buildup), patients who consumed 8 ounces of POM Wonderful 100% Pomegranate Juice daily for a one-year period experienced a 30% reduction in intima-media thickness of the carotid artery vs, a 9% increase for the placebo group."

• "Blood Flow/Pressure: . . . In a pilot study of 10 subjects with hypertension ... a slight decrease in systolic blood pressure was experienced after consuming POM Wonderful 100% Pomegranate Juice daily for two weeks."

• "Erectile function: A randomized, placebo-controlled crossover pilot study of 55 men with   mild to moderate erectile dysfunction evaluated the efficacy of consuming POM Wonderful variety pomegranatejuice... After consuming POM daily for 4 weeks the men reported 50% greater likelihood of experiencing improved erections as compared to   placebo."

• "Prostate Cancer: In a clinical study involving 46 men with rising PSA after prostate cancer treatment (surgery or radiation) who consumed 8 ounces of POM Wonderful 100% Pomegranate Juice daily over two years, PSA doubling time increased from 15 to 54 months . . .  PSA doubling time is an indicator of prostate cancer progression."

**From a webpage titled "10 Ways to Help Your Heart in 2010":**

• "Drink POM Juice: Reducing LDL cholesterol helps improve blood flow and artery stress. One study with 13 healthy male volunteers who drank POM Wonderful 100% Pomegranate Juice for 2 weeks, (found) the amount of LDL cholesterol oxidation decreased by 20% and antioxidant activity in the blood increased by 9%."

**From a webpage titled "Final POM tour round up: Fun moments ":**

• "Wonderful pomegranates [the variety of pomegranate used in your product] contain . . ."

- 12 -

- "Polyphenol Antioxidants - help the body against 'free radicals' molecules that cause damage to our bodies over time. Free-radical damage is a major factor in aging and chronic diseases such as heart disease and cancer. Scientific research has shown that a daily amount of polyphenol antioxidants may help promote a healthy heart and prostate by minimizing factors that lead to atherosclerosis, or plaque in the arteries, and prostate cancer . . . "

- "Vitamin C - . . . may also reduce the length and severity of colds . . ."

- "Fiber - . . . may reduce LDL cholesterol, which may help lower the risk of heart disease."

**From a webpage titled "Nature's Rainbow":**

- "[R]ed-purple foods - such as pomegranates ... are rich in anthocyanins . Anthocyanins are strong antioxidants, and research suggests that they may. reduce the risk of certain types of cancer."

**From a webpage titled "Other Antioxidant Benefits":**

- "Pomegranate juice has a superior ability to prevent LDL cholesterol from being oxidized by free radicals. Emerging science suggests that LDL oxidation may be a precursor to atherosclerosis or arterial plaque."

**From a webpage titled "What Can Antioxidants Do For You?":**

- "Hey guys, want to protect your prostate? Start by sipping on some POM Wonderful 100% Pomegranate Juice . . . POM 100% Pomegranate Juice has been shown to slow prostate tumor growth . . ."

**From a webpage titled "POM: Sweet - And Safe for Diabetics":**

- "There have actually been several studies published about diabetic patients who consume 8 ounces of POM juice every day over an extended period.... [T]he patients' state of oxidative stress ... actually decreased. Diabetes is a very complicated disease, with many potential side effects. Diabetics are at risk for heart disease, kidney disease, and other complications, many of which are fundamentally a result of oxidative stress. Since diabetics often experience higher levels of oxidative stress, the uniquely strong natural antioxidants that make POM so healthy are particularly beneficial."

31.    In addition, POM improperly uses disease claims in the form of personal testimonials

in its continuing effort to mislead and deceive the public, as portrayed on its website:

• "I have been drinking POM for about a month, daily . . . I can tell you that I feel
much better!! My cholesterol and blood pressure are slightly lower . . . "

• "I have recently been having a lot of problems with unusual lumps on my body
and they are very sore and uncomfortable I have found the only thing that
gets rid of the lumps is POM Wonderful. Since drinking the POM every time
I feel a lump they have amazingly gone down! Basically I use POM as a kind of
medicine."

• "I am so thankful for POM! It saved my boyfriend's life. The man of my dreams
was diagnosed with Prostate Cancer . . . Upon being diagnosed, he has been
drinking two glasses of POM Juice [daily] . . . We both believe that POM Juice
has been the crucial factor in keeping his PSA levels at an undetectable level. The
powerful antioxidants contained in this fluid have also helped keep him healthy
enough to fight the side effects of his treatments and give him energy to improve
his health . . . "

• "I'm writing to tell you what POM wonderful [sic] has done for my mother
suffering from a severe heart infection . . . [A]n infection blossomed in a valve of
her heart and traveled to the bones in her face. . . . I started bringing her POM and
showed her all of the health benefits for her heart and blood function.... Soon
she was admitted into Reston Hospital in Northern VA and . . . returned home
with a ... line that administers IV antibiotics twice a day. . .Through her
recovery she ... loyally consumes her POM juice like clock work, almost as if it
is a part of her medical routine [S]he swears that the pomegranate juice has
helped her keep her immunity up and is also what has kept her infection from
getting worse due to keeping her heart functions strong and the blood flowing
more efficiently. . . She has received peace of mind knowing she is taking part in
keeping her system healthy through the antibiotic process by drinking POM."

32.    POM has one advertisement that says "Hurry! Prostates everywhere in danger!"

Bottles of PWP juice then shoot across the screen and a new message then appears, issuing from a

PWP bottle: "I'm off to save Prostates!" This is shown with a tagline, "The Antioxidant Superpower.

- 14 -

Learn about POM'S promising health benefits." When you click that page, it summarizes the research purporting to show that consuming PWP may slow the progression of prostate cancer.

33.     POM's website contains many of the ads they have utilized to mislead and deceive. These ads speak for themselves:











# Survival kit.

**POM Wonderful Pomegranate Juice.
The Antioxidant Superpower.™**



# Heart
# therapy.

**POM Wonderful Pomegranate Juice.
The Antioxidant Superpower.™**



- 17 -















### POM's Prior Misconduct

34.    In 2005, the National Advertising Division ("NAD") of the Council of Better Business Bureaus found that the medical research POM relied on was inadequate to substantiate POM's claim that drinking eight ounces of POM per day can reduce arterial plaque by up to 30% or prevent plaque build-up in healthy people.

35.    Again, in 2006 NAD found that POM's research did not substantiate its claims that PWP contains "more naturally occurring antioxidants than any other drink," and that drinking its

pomegranate juice can help prevent premature aging, cancer, heart disease, arterial plaque build-up, stroke Alzheimer's disease, or any other disease.

36.     In 2009, the United Kingdom's Advertising Standards Authority ("ASA") considered the evidence submitted by POM Wonderful to support the antioxidant benefits of pomegranate juice but concluded that it fell short showing any direct relation between consuming the product and a longer life." As a result, the ASA found a POM advertisement, "and particularly the claim cheat death, misleadingly exaggerated the health benefits likely to be achieved by drinking the product."

37.     Finally, in 2010, the U.S. Food and Drug Administration ("USDA") sent a warning letter to the president of POM declaring the claims made by POM, through their labeling and website, violations of the FDA Act. The FDA cautioned that the claims made by POM established the product as a drug, because it appeared the intended use was for the mitigation, treatment or prevention of disease and these claims had not been substantiated through any reliable or called medical research. The FDA found that POM's marketing was in direct violation of the FDA Act.

38.     There is more of the same misconduct here. POM's disease prevention and disease mitigation claims at issue in this case are false, deceptive, and misleading because POM has no reasonable basis that substantiated these representations at the time the representations were made. Therefore, these representations are false, misleading and reasonably likely to deceive the public.

39.     And as a result of the misleading messages conveyed through its campaign, POM has been able to charge a significant price premium for PWP.

## CLASS REPRESENTATION ALLEGATIONS

40.     Plaintiff brings this lawsuit on behalf of herself and the proposed Class members under Rule 1.220(b) (2) and (b)(3) of the Florida Rules of Civil Procedure. The proposed Class consists of:

- 21 -

*All persons who purchased Pom Wonderful Pomegranate*
*Juice in the State of Florida.*

41.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Class are the Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

42.     *Numerosity.* The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff. The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

43.     *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendant had adequate substantiation for its claims prior to making them;

(b)    whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

- 22 -

(c)  whether Defendant's alleged conduct violates public policy;

(d)  whether the alleged conduct constitutes violations of the laws asserted herein;

(e)  whether Defendant engaged in false or deceptive advertising;

(f)  whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(g)  whether Plaintiff and Class members are entitled to an award of punitive damages; and

(h)  whether Plaintiff and Class members are entitled to declaratory and injunctive relief whether Defendant had adequate substantiation for its claims prior to making them;

44.  *Typicality*.  Plaintiff's claims are typical of the claims of the members of the Class in that the Defendant was unjustly enriched as a result of Plaintiff's and the Class' respective purchases of PWP.

45.  *Adequacy of Representation*.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

46.  *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory

- 23 -

judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

47.     In the alternative, the Class may also be certified because:

(a)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)   Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

48.     The claims asserted herein are applicable to all customers throughout the State of Florida who purchased PWP.

49.     Adequate notice can be given to Class members directly using information maintained in Defendant's or Defendant's direct purchasers' records, or through notice by publication.

50.     Damages may be calculated, in part, from the sales information maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized.

- 24 -

However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

51.    Unless a class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class members.  Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class will continue to be misled.

## COUNT I

**For Violations of the Florida Deceptive and Unfair Trade Practices Act,
Florida Statutes §501.201, *et seq.*,
On Behalf of Plaintiff and the Class**

52.    Plaintiff realleges and incorporates by reference the allegations contained in the above referenced paragraphs as if fully set forth herein.

53.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* (the "Act").  The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

54.    Plaintiff is a consumer as defined by Fla. Stat. §501.203.  PWP is a good within the meaning of the Act.  POM is engaged in trade or commerce within the meaning of the Act.

55.    Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

56.    Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section]

- 25 -

5(a)(1) of the Federal Trade Commission Act." POM's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343. Further, FTC rules and regulations require that POM have the same level of substantiation for its advertisements at the time they are made as it claimed in the advertisement. POM claims clinical proof.

57.     POM has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

58.     Plaintiff and the Class have been aggrieved by POM's unfair and deceptive practices in that they paid for PWP.

59.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of POM, as more fully described herein.

60.     Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

61.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the Class make claims for damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty
### On Behalf of Plaintiff and the Class

62.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-51 as if fully set forth herein.

63.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased PWP . The terms of that contract include the

- 26 -

promises and affirmations of fact made by POM on its product labels and through its marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and POM on the other.

64.     All conditions precedent to POM's liability under this contract, including notice, has been performed by Plaintiff and the Class.

65.     POM breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product which could provide the benefits described above.

66.     As a result of POM breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of POM's revenues to Plaintiff and the proposed Class members;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.     Ordering POM to engage in a corrective advertising campaign;

F.      Awarding attorneys' fees and costs; and

G.      Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: August _6_, 2010          ROBBINS GELLER RUDMAN & DOWD LLP
                                 STUART A. DAVIDSON
                                 Florida Bar No. 084824
                                 CULLIN A. O'BRIEN
                                 Florida Bar No. 597341
                                 MARK DEARMAN
                                 Florida Bar No. 982407


                                 _____
                                         Stuart A. Davidson

                                 120 East Palmetto Park Road, Suite 500
                                 Boca Raton, FL  33432
                                 Telephone:  561/750-3000
                                 561/750-3364 (fax)
                                 sdavidson@rgrdlaw.com
                                 cobrien@rgrdlaw.com
                                 mdearman@rgrdlaw.com